**MANDATE**

20-1961-cv
*Alkholi v. Macklowe*

1:17-cv-00016-PKC

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 24 2021

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of May, two thousand twenty-one.

PRESENT: DENNIS JACOBS,
DENNY CHIN,
*Circuit Judges*,
J. PAUL OETKEN,
*District Judge.*[*]

------------------------------------------x

DR. HAMZA B. ALKHOLI, AHMED HALAWANI,

*Plaintiffs-Appellants*,

-v-     20-1961-cv

HARRY B. MACKLOWE, MACKLOWE INVESTMENT PROPERTIES, LLC,

*Defendants-Appellees.*

------------------------------------------x

---

[*] Judge J. Paul Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | KRISTEN G. NIVEN (Donald N. David, Katherine E. Giddings, *on the brief*), Akerman LLP, New York, New York, and Tallahassee, Florida. |
| FOR DEFENDANTS-APPELLEES: | DAVID TODD FEUERSTEIN, Feuerstein Kulick LLP, New York, New York. |

Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants Hamza B. Alkholi and Ahmed Halawani ("plaintiffs") appeal the district court's dismissal of their claims against defendants-appellants Harry B. Macklowe ("Macklowe") and Macklowe Investment Properties, LLC ("MIP" and, together with Macklowe, "defendants"). By memorandum and order entered December 22, 2017 (Batts, *J.*), the district court dismissed all claims against Macklowe in his individual capacity and the claim for breach of written contract against MIP. By opinion entered May 21, 2020, the district court (Castel, *J.*) granted MIP's motion for summary judgment as to the remaining claims against it for breach of oral contract, unjust enrichment, and *quantum meruit*. Judgment entered on May 21, 2020. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

I.    *Background*

Plaintiffs, both residents of Saudi Arabia, were potential investors in the acquisition and development of the retail component of 432 Park Avenue, a luxury residential skyscraper in Manhattan (the "Project"). In 2013, Macklowe, the chairman of MIP, a real estate investment and development firm based in New York City, proposed a joint venture between Alkholi and MIP pursuant to which Alkholi would participate as an investor in the Project and solicit additional investors. Halawani was one such prospective investor, as was Sheikh Hamad Bin Jassim bin Jaber Al-Thani ("HBJ"), the former Prime Minister of Qatar and chairman of its sovereign wealth fund, the Qatar Investment Authority.

In preliminary negotiations, the parties discussed what plaintiffs refer to as a "Capital Raise Agreement," Appellants' Br. at 5, pursuant to which plaintiffs would receive 2% of the total raised capital as a fee for securing the necessary capital. The joint venture did not materialize, however, and the Project went forward with HBJ as the sole investor without plaintiffs' investment. Following this development, QInvest, the financial investment firm facilitating HBJ's investment in the Project, paid plaintiffs $750,000 (representing a 0.5% placement fee for HBJ's $150 million investment in the Project) and an additional $5 million for the lost opportunity to participate in the Project. Plaintiffs argue that defendants separately owe plaintiffs the 2% placement fee

3

based on their earlier discussions regarding the proposed joint venture, pursuant to which they helped secure HBJ as an investor.

On January 13, 2017, plaintiffs commenced this suit for breach of written contract, breach of oral contract, unjust enrichment, and *quantum meruit*. The district court ruled as noted above, and this appeal followed.

**II.**   *Discussion*

We review *de novo* a district court's grant of a motion to dismiss. *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020). We review *de novo* a district court's grant of summary judgment, resolving all ambiguities and drawing all permissible factual inferences in favor of the party against whom summary judgment is sought. *Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020). "Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, we will affirm a grant of summary judgment only where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Tiffany & Co. v. Costco Wholesale Corp*, 971 F.3d 74, 83 (2d Cir. 2020). A party cannot defeat a motion for summary judgment with "conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation mark omitted).

We first address the district court's summary judgment decision, which found that pursuant to the New York Statute of Frauds, N.Y. Gen. Oblig. Law § 5-701

4

(McKinney 2002) (the "Statute"), MIP was entitled to summary judgment on the surviving three claims against it.[1] We conclude that the district court correctly held that the Statute bars plaintiffs' claims. Accordingly, as discussed further below, we need not review the district court's decision granting the earlier motion to dismiss.

    A.    **The Motion for Summary Judgment**

        1.    Applicable Law

In New York, certain contracts must be in writing and signed by the party (or his agent) against whom it is sought to be enforced. *See* N.Y. Gen. Oblig. Law § 5-701(a) (McKinney 2002) ("Every agreement, promise or undertaking [covered by these provisions] is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent . . . ."). The memorandum "must contain expressly or by reasonable implication *all the material terms* of the agreement." *Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 575 (N.Y. 1969) (emphasis added). In determining whether the Statute is satisfied, New York law permits "signed and unsigned writings to be read together, provided that they clearly refer to the same subject matter or transaction." *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 55 (N.Y. 1953); *accord Kelly v. P&G Ventures 1, LLC*, 148 A.D.3d 1002, 1003

---

[1] The district court applied New York law, and the parties' briefs on appeal assume that New York law governs this case. Accordingly, we apply New York law. *See Trikona Advisers, Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (holding that parties' implied consent to Connecticut law establishes applicable choice of law).

5

(N.Y. App. Div. 2d Dep't 2017). "Parol evidence . . . is immaterial to the threshold issue whether the documents are sufficient on their face to satisfy the Statute . . . . That issue must be determined from the documents themselves, as a matter of law." *Bazak Int'l Corp. v. Mast Indus.*, 73 N.Y.2d 113, 118 (N.Y. 1989).

As relevant here, the Statute applies if the purported agreement "[i]s a contract to pay compensation for services rendered . . . in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, . . . including the creating of a partnership interest." N.Y. Gen. Oblig. Law § 5-701(a)(10) (McKinney 2002). The Statute defines "negotiating" to include "procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction." *Id.*

2. Application

Plaintiffs raise two issues: they contend that, first, the Statute does not apply to the circumstances of this case and, second, even if the Statute does apply, its requirements are met. We are not persuaded.

First, as the district court found, "the Statute comfortably covers the purported agreement alleged by plaintiffs." J. App'x at 552. The essence of plaintiffs' claims is that they are entitled to compensation for "procuring an introduction to a party," or a prospective party, to a real estate transaction. N.Y. Gen. Oblig. Law § 5-

6

701(a)(10) (McKinney 2002). They contend that the "Statute of Frauds does not apply" to a "long-term business relationship with fiduciary obligations to each other as partners in a Joint Venture." Appellants' Br. at 27 (citing *Dura v. Walker, Hart & Co.*, 27 N.Y.2d 346, 350 (N.Y. 1971)). This argument is unavailing. Not only does this interpretation cut against the clear text of the Statute, the New York Court of Appeals has applied the Statute to bar contract claims against a "joint venture[] to acquire and operate companies in the media business." *Snyder v. Bronfman*, 13 N.Y.3d 504, 506 (N.Y. 2009). *See also Springwell Corp. v. Falcon Drilling Co., Inc.*, 16 F. Supp. 2d 300, 304 (S.D.N.Y. 1998) ("It is well settled that the Statute of Frauds applies to claims for finder's fees."). Accordingly, the Statute clearly applies to the circumstances here.

Second, we agree with the district court's conclusion that the purported agreement does not satisfy the Statute. As the district court held based on a review of the email exchanges, there was no meeting of the minds on all essential terms as a matter of law. Macklowe's initial email merely stated "I think a 2% fee will work," J. App'x at 553; there was no agreement as to who would pay the 2% placement fee, and there was "no other writing that would permit" the material term of the identity of the obligor to be read into the email exchange, J. App'x at 557. We also agree with the district court's detailed analysis of the email exchanges following the November 6 email, including Halawani's characterization of Kimmerman's mid-December emails regarding the placement fee as a "counteroffer," and noting that "[i]f Halawani believed

7

that all material terms had been resolved in the November 6 email exchange between Alkholi and Macklowe, Halawani would not have responded as he did, and would have treated Kimmelman's email as a reneging of an agreement, not as a 'counteroffer.'" *Id.* at 555.

Based on the factual record and drawing all permissible inferences in favor of plaintiffs, we hold as a matter of law that the documents relied on by plaintiffs are insufficient to satisfy the Statute. Accordingly, we conclude that the district court did not err in granting summary judgment to MIP on plaintiffs' claim for breach of oral contract.

Finally, we also hold that the district court did not err in granting summary judgment to MIP on plaintiffs' implied-in-law contract claims for unjust enrichment[2] and *quantum meruit*.[3] The Statute clearly applies as a defense to claims for unjust enrichment and *quantum meruit*. *See* N.Y. Gen. Oblig. Law § 5-701(a)(10) (McKinney 2002) ("This provision shall apply to a contract implied in fact or in law to

---

[2] Under New York law, to plead an unjust enrichment claim, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (internal quotation marks and citation omitted).

[3] Under New York law, to plead a *quantum meruit* claim, a plaintiff must allege "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services allegedly rendered." *Tesser v. Allboro Equip. Co.*, 302 A.D.2d 589, 590 (N.Y. App. Div. 2d Dep't 2003) (citations omitted).

8

pay reasonable compensation."); *Snyder*, 13 N.Y.3d at 509-10 (upholding dismissal of unjust enrichment and *quantum meruit* claims on Statute of Frauds grounds).

### B. The Motion to Dismiss

Our affirmance of the district court's summary judgment decision obviates the need for review of the district court's earlier decision on the motion to dismiss. In its earlier decision, the district court dismissed all claims against Macklowe in his individual capacity and the claim for breach of written contract against MIP.

First, "an attempt to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47 (N.Y. 2018) (citations, alterations, and internal quotation marks omitted). As we have held that there is no "corporate obligation" against MIP here, plaintiffs' claims against Macklowe in his individual capacity fail as a matter of law.

Second, just as the Statute bars plaintiffs' claims for breach of an oral contract, it also bars their claims for breach of a written contract. The various emails and other documents did not establish a meeting of the minds on all the material terms of the purported contract.

\* \* \*

We have considered plaintiffs' remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10